**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| MARK DUFFY, as Personal Representative of the Estate of Thomas Duffy, on behalf of the Heirs and the Estate of Thomas Duffy and CENTRAL COPTERS, INC., a Montana corporation, | **CV-21-71-BU-BMM** |
| Plaintiffs, | **ORDER** |
| vs. | |
| KAMAN AEROSPACE CORPORATION, a Delaware corporation, | |
| Defendant. | |

**INTRODUCTION**

Defendant Kaman Aerospace Corporation ("Kaman") has filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Doc. 7). Kaman requests, in the alternative, that the Court transfer the case to Connecticut. *Id.*, (*citing* 28 U.S.C. § 1404(a)). Plaintiffs Mark Duffy, as personal representative of the estate of Thomas Duffy, and Central Copters, Inc., (collectively, "Plaintiffs"), oppose the Motion. The Court held a hearing on the matter on December 9, 2021.

## BACKGROUND

Plaintiffs bring this action against Kaman following the death of Thomas Duffy, an employee-pilot for Central Copters, in an accident in Oregon on August 24, 2020, while operating a Kaman-1200 ("K-Max") helicopter manufactured by Kaman. (Doc. 5 at ¶¶ 2, 5, 7). Plaintiffs allege that a defectively designed and manufactured flap on the blades of the K-Max helicopter caused the accident. *Id.* at ¶ 3. Plaintiffs also allege that Kaman knew of the defects and failed to inform both Thomas Duffy and Central Copters about a previous crash. *Id.* at 5. The accident forced Central Copters to ground three other K-Max helicopters. *Id.* at ¶ 8. Two of these three helicopters had been sold to Central Copters by an entity other than Kaman. (Doc. 9 at ¶ 9).

## LEGAL STANDARD

### Personal Jurisdiction

The Court must construe the complaint "in the light most favorable to the plaintiff" when analyzing a motion to dismiss for lack of personal jurisdiction. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 15 (Mont. 2015) (*quoting Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC,* 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143 (Mont. 2011). The Court must accept as true the allegations in the complaint. *Nelson v. San Joaquin Helicopters*, 742 P.2d 447, 449 (Mont. 1987).

2

Plaintiffs carry the "burden of proving that personal jurisdiction exists." *Cameron v. Thomson Intern'l, Inc.*, CV 21-17-BLG-SPW-TJC, 2021 WL 3409999, at *2 (D. Mont. Jul. 19, 2021), adopted 2021 WL 3406352 (D. Mont. Aug. 4, 2021). Two requirements must be met for personal jurisdiction to be proper: "(1) the law of the forum must allow for personal jurisdiction, and (2) the exercise of jurisdiction must be constitutional." *Nomad Global Comm'n Solutions, Inc. v. Hoseline*, CV 20-138-M-DLC, 2021 WL 1400983, at *2 (D. Mont. Apr. 14, 2021).

**Transfer**

A district court may transfer any civil action "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court retains discretion whether to transfer venue. *Great Plains Crop Mgmt., Inc. v. Tryco Mfg. Co., Inc.*, 554 F. Supp. 1025, 1028 (Mont. 1983). The moving party bears "the burden of showing that a change of venue would enhance witness convenience and the interests of justice." *Id.*

## ANALYSIS

## I.   Whether personal jurisdiction exists over Kaman in Montana

Neither party argues that Kaman engages in "systematic and continuous" activities as to subject Kaman to general personal jurisdiction in Montana. *See, International Shoe Co. v. Washington*, 326 U.S. 310, 316-319 (1945). The Court need only analyze Montana's specific personal jurisdiction over Kaman.

### a. Montana's Long-Arm Statute

Plaintiffs must first establish that the forum law "allow[s] for personal jurisdiction." *Hoseline*, 2021 WL 1400983, at *2. The long-arm statute in Rule 4(b) of Mont. R. Civ. P. provides the forum's requirements to determine whether personal jurisdiction exists. *Great Plains Crop Mgmt., Inc.*, 554 F. Supp. at 1026-1027. The long-arm statute subjects a person to the jurisdiction of Montana courts as to any claim for relief arising from the following acts:

> (A) the transaction of any business in Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> . . . .
> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
> . . . .

Mont. R. Civ. P. 4(b)(1).

### i. The transaction of any business in Montana

Kaman argues first that Plaintiffs' claims do not arise out of its business in Montana. (Doc. 8 at 12). The Court must evaluate whether "a relationship exists 'among [ ] [Kaman], the forum, *and the litigation*,' . . . not just with [Kaman]'s contacts with Montana in general." *Buckles v. Cont'l Res., Inc.*, 462 P.3d 223, 229 (Mont. 2020) (citation omitted). The Montana Supreme Court faced a similar question in *Nelson v. San Joaquin Helicopters*, 742 P.2d 447 (Mont. 1987).

Nelson, a helicopter owner, transported a helicopter for repairs to Garlick Helicopters in Hamilton, Montana. *Id.* at 448. Garlick informed Nelson that they could not perform the repairs and recommended that Nelson take his helicopter to San Joaquin Helicopters in California. *Id.* Garlick had entered an agreement with San Joaquin two years earlier under which Garlick would transport helicopter parts to San Joaquin. *Id.* Garlick failed to complete the delivery of the parts. *Id.* Only in response to San Joaquin's phone calls to Garlick in Montana did Garlick complete some of the deliveries. *Id.*

Nelson took his helicopter to San Joaquin for repairs upon the recommendation of Garlick, but soon began over-the-phone negotiations from his home in Bozeman, Montana with San Joaquin for the purchase of the helicopter. *Id.* San Joaquin agreed to purchase the helicopter. *Id.* San Joaquin paid for the helicopter with a promissory note signed by Garlick. *Id.* Nelson collected only a portion owed on the $10,000.00 promissory note before Garlick became insolvent. *Id.* Nelson brought claims against San Joaquin. *Id.*

The Montana Supreme Court determined that personal jurisdiction properly could be exercised over San Joaquin for the following reasons: 1) San Joaquin spent two years attempting to obtain performance and collect debts from Garlick under their contractual relationship; 2) San Juaquin made phone calls to Garlick to discuss Garlick's performance of the debt collection; 3) Garlick shipped parts to

San Joaquin from Montana; 4) San Joaquin negotiated and agreed to the purchase of Nelson's helicopter over the phone with Nelson while Nelson was in Montana; 5) Nelson's agreement with San Joaquin arose directly from Garlick's recommendation; and 6) San Joaquin interjected itself into Montana when it created a contractual relationship through the promissory note between Garlick and Nelson for San Joaquin's purchase of Nelson's helicopter. *Id.* at 448-449. These allegations proved "sufficient to establish business transactions " in Montana. *Id.* at 449.

TAG, an out-of-state business, sold two vehicles to Grizzly that turned out to have mechanical problems and body damage. *Grizzly Sec. Armored Exp., Inc.*, 255 P.3d at 145. TAG moved to dismiss the case for lack of personal jurisdiction because it had merely "entered into a contract with Grizzly to sell vehicles" in Montana. *Id.* at 148. TAG presented further arguments: it had not entered into a contract with any other Montana business; it had not solicited business from Montana; that sales to Grizzly had not made up a significant portion of TAG's business; and that the critical performance of the contracts had occurred outside Montana. *Id.* at 148. TAG had "established a business relationship with Grizzly through its past contracts" by selling five other vehicles to Grizzly over a five-year period. *Id.* TAG knew that Grizzly "intended to use the vehicles in its Montana

business, that TAG previously had sold vehicles to Grizzly, and that TAG had serviced Grizzly's vehicles through other Montana businesses." *Id.* at 149.

Similarly, in *Great Plains Crop Mgmt., Inc.*, the District Court exercised personal jurisdiction over a non-resident defendant who had not visited Montana, but had transacted substantial business within the borders of the state. 554 F.Supp. at 1027. The District Court noted that the defendant, Tryco, advertised in a magazine that could reasonably be expected to reach agriculturally-oriented states like Montana. *Id.* Tryco had mailed its brochure into Montana, "and facilitated a sale to Great Plains by both calling this state and accepting calls from here." *Id.* Tryco also had invited the plaintiff to Illinois "in the hope of selling him a piece of equipment for use in this state." *Id.* Tryco arranged for shipping several machines into Montana, and sent the plaintiff a letter soliciting another sale, "even including the terms of the sale and indicating the need for prompt action by Great Plains." *Id.* Both parties also had considered "the possibility of the plaintiff becoming a Tryco dealership in Montana." *Id.*

As illustrated, Montana's long-arm statute under Mont. R. Civ. P. 4(b)(1)(A) for "the transaction of any business" extends to out-of-state defendants that have even fewer substantial contacts than Kaman. Kaman sent its marketing manager Steve Daniels to Belgrade, Montana in 1997 to meet with Mark Duffy, president of Central Copters. (Doc. 17-4 at ¶ 20). The visit served to market the K-Max

helicopters to Central Copters. *Id.* Daniels attempted to close a sale of a helicopter and represented that the K-Max helicopters sold by Kaman would "perform well for the type of work Central Copters performs." *Id.*

A Kaman pilot delivered the K-Max helicopter to Central Copters in Montana in 1997. *Id.* at ¶ 21. Kaman later sent service technicians to Montana to "assist Central Copters' maintenance crew and pilots with technical and operational issues and the performance of inspections." *Id.* at ¶ 22. The service technicians also trained Central Copters' maintenance crew and pilots in Montana during their stay. *Id.* Kaman provided service technicians and parts to Central Copters even after the sale of the first K-Max helicopter. *Id.* at ¶¶ 22-25.

Similar to *Nelson*, Kaman made phone calls to Central Copters in Montana and interjected themselves into negotiations in which Central Copters had engaged with other entities for the potential purchase of more K-Max helicopters. *Id.* at ¶¶ 32-35. For example, Central Copters purchased a K-Max helicopter manufactured by Kaman from the U.S. State Department in an auction in 2007. *Id.* at ¶ 32. Kaman agreed to transport the helicopter for Central Copters from Columbia to the United States for $50,000. *Id.* at 32-33. This helicopter was involved in the fatal crash with Duffy. *Id.* at ¶ 33. Kaman later interjected itself into Central Copters' negotiations to purchase a K-Max from South Korea in 2021. *Id.* at ¶ 34. The South Korean operator owed money for parts to Kaman. *Id.* Kaman agreed to the

sale of the helicopter to Central Copters upon Central Copters' payment of the South Korean operator's outstanding debt. *Id.*

Kaman made no fewer than ten trips to Montana to assist Central Copters. *Id.* at ¶ 34. Kaman has delivered numerous parts to Central Copters in Montana as part of an exchange program. *Id.* at 36. Central Copters also has ordered and been supplied spare blades that Kaman has delivered to Montana. *Id.* at 38. Kaman willingly has marketed its services and products to Plaintiffs. Plaintiffs' allegations are "sufficient to establish business transactions" in Montana to support specific jurisdiction under the Montana long-arm statute. *Nelson*, 742 P.2d at 449.

### b. Due Process

The Court next must consider whether Montana's exercise of personal jurisdiction over Kaman would "violate traditional notions of fair play and substantial justice." *Grizzly*, 255 P.3d at 149 (citations omitted). "To establish specific jurisdiction over a nonresident defendant: (1) the defendant must purposefully direct his activities toward the forum or purposefully avail himself of the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Johnson v. UBS AG*, No. 20-56253, 2021 WL 2935953, at *2 (9th Cir. Jul. 21, 2021).

### i.   Whether Kaman purposefully directed its activities towards Montana or purposefully availed itself of Montana

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has no consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). A nonresident defendant purposefully avails itself to the laws of the forum state "when it takes voluntary action designed to have an effect in the forum." *Buckles*, 462 P.3d at 231-32. The defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, ___ U.S. ___, ___, 141 S. Ct. 1017, 1025 (2021) (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* (*quoting Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). The contacts must show that the defendant deliberately reached beyond its home and exploited the market in Montana or created a contractual relationship there. *Id.* (citation omitted). Kaman cites to *Cameron* to argue that it did not purposefully avail itself of Montana. 2021 WL 3409999. *Cameron* determined that the purposeful availment prong was not sufficiently satisfied where the defendant had "no facilities or property in Montana; none of its employees reside or are

domiciled in Montana; it has no subsidiaries in Montana; and all of its activities – growing, harvesting, packing and selling, occur in California." *Id.* at *5.

Kaman ignores the fact that it sent marketing professionals, sales technicians, and pilots to Montana to assist Central Copters. Kaman procured the sale of the first K-Max by sending a marketing manager to Central Copters. (Doc 17-4 at ¶ 20).  Kaman assisted in projects and maintenance for Central Copters. *Id.* at ¶¶ 22-25. Kaman delivered a helicopter and parts to Central Copters. *Id.* at ¶¶ 21, 36, 38. Kaman interjected itself into Central Copters' negotiations and contractual agreements with third parties that Central Copters performed from Montana. *Id.* at ¶¶ 32-35. Kaman engaged in a contractual exchange program with Central Copters in which they send parts to Central Copters. *Id.* at ¶ 36.

Kaman argues that Central Copters is Kaman's only Montana customer and that Central Copters comprised less than 1% Kaman's total net sales from 2017 to 2020. (Doc. 8 at 17). Kaman's own declaration reveals that only sixteen K-Max operators exist in the world. (Doc. 30 at ¶ 12). Central Copters constitutes one of these sixteen operators. Kaman's contacts with Montana are not "random." *See Keeton*, 465 U.S. at 774. Kaman purposely availed itself of Montana and should reasonably anticipate being hailed to Montana. *B.T. Metal Works*, 100 P.3d at 134.

### ii.    Whether Plaintiffs' claims arise out of or relate to Kaman's Montana contacts

General contacts with the forum alone prove insufficient to satisfy due process. *Buckles*, 462 P.3d at 228. The action must "arise out of or relate to the defendant's contacts with the forum." *Id.* (*quoting Bristol-Myers Squibb Co. v. Superior Court*, ___ U.S. ___, ___, 137 S. Ct. 1773, 1786 (2017). The U.S. Supreme Court analyzed this prong in *Ford*. Plaintiffs brought products liability claims against Ford after a pair of car accidents. 141 S.Ct. at 1022. The plaintiffs brought suit in the two states where the accidents had occurred. *Id.* Ford argued that the respective states lacked personal jurisdiction because the particular vehicles involved in the accidents had not been purchased, sold, or manufactured in the forum states. *Id.* Ford conceded that it purposefully had availed itself of conducting activities in the forum states through its business activities, but argued that the activities failed to connect to the suits. *Id.* at 1026.

Ford insisted on the need for causal link, where jurisdiction attaches "only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* (italics in original). The U.S. Supreme Court noted that the "causation-only" approach had no support from case precedent: "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.*  The most common formulation of the rule "demands that the suit

12

'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (italics in original).

Similarly, *Ford* reasoned that an exclusive causal connection test would conflict with precedent for cars bought outside of a forum state and then sold to consumers within the forum state. *Id.* at 1029. "[S]ome relationships will support jurisdiction without a causal showing." *Id.* at 1026. Ford had served a market in the forum states for many years for the "very vehicles that the plaintiffs allege malfunctioned and injured them in those states." *Id.* at 1028. These factors established a strong "relationship among the defendant, the forum, and the litigation"—the "essential foundation" of specific jurisdiction. *Id.*

A strong relationship exists among Kaman, Montana, and the Plaintiffs' claims. *Id.* Kaman has marketed itself to Central Copters in Montana. Kaman also has shipped blades to Central Copters in Montana. In fact, the blades that allegedly caused the helicopter crash at issue were purchased by Central Copters from Kaman and shipped by Kaman to Montana. (Doc. 17-4 at ¶¶ 38-39). These transactions establish that the claim arises out of or relates to Kaman's contacts in Montana.

Kaman further argues that it lacked an extensive market presence in Montana like the defendant in *Ford*. (Doc. 8 at 22-23). Context matters. Central Copters is one of sixteen K-Max operators worldwide. (Doc. 30 at ¶ 12). Kaman

13

may not have thirty-six dealerships in Montana. Kaman maintained a close

business relationship with Central Copters, however, and sold the blades that

allegedly caused the accident to Central Copters. *Ford*, 141 S.Ct. at 1028.

Kaman also argues that Montana lacks specific jurisdiction because the

crash occurred in Oregon. (Doc. 8 at 23-24). The crash itself presents Oregon's

only connection with Plaintiffs' claims. To interpret *Ford* to mean that Tom

Duffy's accident needed to be in Montana for personal jurisdiction to be proper in

Montana frustrates the purpose of the language "or relate to." *Buckles*, 462 P.3d at

228.

### iii.   Whether Montana's exercise of personal jurisdiction over Kaman would be reasonable

The Ninth Circuit lays out seven factors to determine whether the exercise of

personal jurisdiction over out-of-state defendants proves reasonable: "(1) the extent

of the defendant's purposeful interjection into Montana; (2) the burden on

defendant of defending in Montana; (3) the extent of the conflict with the

sovereignty of another possible forum state; (4) Montana's interest in adjudicating

the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

importance of Montana to plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum." *Abbey v. Chubb Corp.*, CV 05-23-H-

DWM, 2006 WL 8449567, at *3 (D. Mont. Apr. 10, 2006). The Court must gauge

the reasonableness prong "on a sliding scale in conjunction with the evaluations of

the first two prongs." *Id.* The exercise of jurisdiction proves presumptively reasonable "if the first two prongs of the analysis are satisfied." *Id.*

Kaman has interjected itself into Montana by selling a helicopter to Kaman, sending service technicians, marketing professionals, pilots, training, and parts to Central Copters, and doing business with Central Copters in Montana for several years. (Doc. 17-4 at ¶¶ 19-34, 36-39). Kaman's burden in having to litigate in Montana proves no greater than the burden Plaintiffs would face in having to litigate elsewhere. Montana possesses an interest in the litigation of its own businesses and residents. Montana represents the most efficient forum as the case already has been filed here and the early stages of litigation have begun. All Plaintiffs and Tom Duffy's family are located in Montana. (Doc. 17-4 at ¶ 46). The sliding scale approach favors Plaintiffs. *Abbey*, 2006 WL 8449567, at *3.

## II.    Whether the claims should be transferred to Connecticut

Kaman seeks to transfer this case to the District of Connecticut pursuant to 28 U.S.C. § 1404(a).  (Doc. 7). Kaman argues that Connecticut represents the proper forum as the parties' relationship is centered there and Plaintiffs agreed to a Connecticut forum selection clause. (Doc. 8 at 7, 26-28). The question of a transfer under § 1404(a) falls to the discretion of this Court. *Great Plains Crop Mgmt., Inc*, 554 F.Supp at 1028. Kaman bears the burden of showing that a change of venue

"would enhance witness convenience and the interests of justice rests on the moving party." *Id.*

### a. Forum selection clause

Kaman argues that forum selection clauses in Exhibits A and B bound Central Copters to the Connecticut forum. (Doc. 8 at 26-28). Kaman argues that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Bjorgen v. Marco Tech. LLC*, CV 17-134-M-DLC, 2018 WL 2023543, at *3 (D. Mont. May 1, 2018) (citation omitted). Kaman applies the *Bjorgen* factors to suggest the lack of basis to disregard the Connecticut forum selection clause. (Doc. 8 at 27). Kaman argues that the factors also apply to the Estate of Tom Duffy because "the alleged conduct of the [the Estate of Tom Duffy] is closely related to the contractual relationship[.]" *Home Savings of Am. v. FTI Consulting, Inc.*, Case No. 11cv2641-IEG (RBB), 2012 WL 13175961, at *3 (S.D. Cal. Feb. 1, 2012).

The forum selection clause between Kaman and Central Copters fails to bind Tom Duffy. In both *Home Sav.* and *Manetti*, the conduct of the third party that was deemed "closely related to the contractual relationship" consisted of actions by corporate subsidiaries, officers, and directors. Tom Duffy served as an employee of Central Copters. The language in the forum selection clauses in those cases did not contain specific language that limited the forum selection clause to a specific party.

16

This case differs. The forum selection clause specifies that it was limited to "this Agreement" between "the parties." (Doc. 9-1 at 6-7, Exhibit A). The parties to "this Agreement" were only Kaman and Central Copters. *Id.* at 1. Tom Duffy was not a party to the agreement and Tom Duffy did not sign the agreement. The forum selection clause from the Commercial Price Catalog similarly lacks any relationship with the Estate of Tom Duffy's wrongful death action.

The forum selection clauses also do not govern Central Copters' claims. Exhibit A relates to a prior aircraft sale in 2006. It does not relate to the sale of the accident helicopter K-Max N314 or the blades that allegedly caused the accident. (Doc. 17-4 at ¶¶ 32, 33). Similarly, the forum selection clause in the 2021 Commercial Price Catalog in Exhibit B was produced after the sale of the accident helicopter and the sale of the blades at issue. *Id.* at ¶ 39.

The forum selection clauses must be honored "unless the party challenging enforcement of such a provision can show it is 'unreasonable' under the circumstances." *Home Sav.*, 2012 WL 13175961, at *2. A forum selection clause proves unreasonable under the following circumstances: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong

public policy of the forum in which suit is brought.'" *Bjorgen*, 2018 WL 2023543 at *4 (citations omitted).

A court may render forum selection clauses unenforceable if the contract between the parties involves a contract of adhesion. *Fayle*, at 1186. "A contract of adhesion is a contract whose terms are dictated by one contracting party to another who has no voice in its formulation." *Kloss v. Edward D. Jones & Co.*, 54 P.3d 1, 7 (Mont. 2002). The law pertaining to contracts of adhesion "recognizes that in certain circumstances, traditional assumptions associated with contract law are unfounded." *Id.* A forum selection clause is "unreasonable and unenforceable if the agreement is not 'deliberately and understandingly made,' and if the contractual language does not 'clearly, unequivocally and unambiguously express a waiver' of personal jurisdiction." *Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476, 481 (2008 Mont.) (citation omitted).

*Polzien* specified that a contract clause is unenforceable against a weaker party if the clause is: "(1) not within the reasonable expectations of said party, or (2) within the reasonable expectations of the party, but, when considered in its context, is unduly oppressive, unconscionable or against public policy." *Id.* "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on

18

the part of the other party regarding acceptance of the provisions." *Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*, 977 P.2d 989, 995 (Mont. 1999).

Little question exists that the contract between Kaman and Central Copters for the sale of the blades in question constitutes a contract of adhesion. Central Copters' K-Max N314 needed new blades. (Doc. 17-4 at ¶ 38). Kaman was the sole manufacturer of the blades. *Id.* at ¶ 39. Central Copters' helicopter would have been inoperable without the new blades. *Id.*; (Doc. 17 at 31). Central Copters agreed to purchase the new blades after Kaman sent a letter to Central Copters about the blades. (Doc. 17-5). Central Copters believed, and Kaman agreed, that the blades would not be subject to the exchange program. *Id.* Central Copters had no knowledge of any forum selection clause until six years after the purchase and thus did not expressly consent to any waiver of personal jurisdiction in Montana. (Doc. 17-4 at ¶ 40); *see Polzin,* 191 P.3d at 481.

Fourth, the forum selection clause does not apply to Central Copters' tort claims. The forum selection clause relates to the "Agreement" for the purchase of goods. (Doc. 8-1). "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc., et al.*, 858 F.2d 509, n. 5 (9th Cir. 1988). Central Copters brings claims for products liability, not breach of contract.

19

**b. Factors to determine whether transfer would be proper**

*RD Rod, LLC v. Montana Classic Cars, LLC*, No. CV12-136-M-DLC-JCL, 2012 WL 6632185 (D. Mont. Dec. 19, 2012), lays out ten factors to determine whether transfer would be proper. Kaman has failed to satisfy its burden "of establishing that the transferee district is a more appropriate forum for the action." *Id.* at *3.

1. The plaintiff's choice of forum.

Plaintiffs have chosen Montana as the forum in which to file.

2. The location where the relevant agreements were negotiated and executed.

Central Copters negotiated and executed the relevant contracts with Kaman while located in Montana.

3. The convenience of witnesses.

Tom Duffy's entire family resides in Montana. (Doc. 17-4 at ¶ 46). The employees of Central Copters with relevant testimony also reside in Montana. *Id.* These facts outweigh any inconvenience to Kaman's witnesses.

4. The ability of the two forums to compel non-party witnesses to testify.

Plaintiffs contend that Tom Duffy's family and any other witnesses whom they anticipate calling all reside in Montana. Kaman insists that more non-party witnesses will reside in Connecticut. This factor favors neither party given that an exhaustive list of witnesses remains unknown.

20

5. The respective parties' relative contacts with the forums.

Kaman interjected itself into Montana through its contacts with Central Copters. Central Copters did indeed visit Connecticut on several occasions. Kaman's contacts with Montana are much greater than that of Central Copters with Connecticut.

6. The state that is most familiar with the governing law.

Montana's choice of law provision for tort claims applies the "most significant relationships" test. *RD Rod*, at *4–5. Applying the test to the case at hand, the most significant relationships exist in Montana. *See id.* Central Copters relied on safety warnings from Kaman in Montana, Central Copters allegedly failed to receive warning in Montana, and the business relationship seems to center in Montana.

7. The relative congestion in the two forums:

Kaman cites to statistics that demonstrate Connecticut's disposition time of civil suits is, on average, 0.6 months faster than Montana. Accordingly, this factors tips slightly in favor of Kaman.

8. The length of time [the] action has already been pending in the transferor forum.

This factor fails to favor either party.

9. Ease of access to sources of proof.

The alleged defects in manufacture and design occurred in Connecticut.

10. Whether there is a 'local interest' in either of the forums.

Montana retains a strong interest in the litigation of its own residents who have been harmed by out-of-state companies.

The application of the factors weighs in favor of Plaintiffs. The Court exercises its discretion to deny Kaman's request to transfer to the United States Court for the District of Connecticut.

**ORDER**

Accordingly, **IT IS ORDERED** that the Kaman's Motion to Dismiss, or in the Alternative, Transfer (Doc. 7) is **DENIED**.

Dated this 10th day of March, 2022.

_____
Brian Morris, Chief District Judge
United States District Court