Mark S. Williams
Williams Law Firm, P.C.
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350
mark@wmslaw.com
wlfmail@wmslaw.com

*Attorneys for Defendant Kaman Aerospace Corporation*

Additional Counsel Listed on Signature Page

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| ROBYN DUFFY, individually and as Personal Representative of the Estate of Thomas Duffy, on behalf of the Estate of Thomas Duffy and the Heirs of Thomas Duffy, C.D., S.D., and M.D., the minor children of Robyn and Thomas Duffy, and MARK DUFFY and PAM DUFFY, the parents of Thomas Duffy; and CENTRAL COPTERS, INC., a Montana corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No. 2:21-cv-71-BMM<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

EXHIBIT INDEX .......... v

1. Factual Background .......... 2

2. Legal Standard .......... 6

3. Argument .......... 6

a. Plaintiffs Cannot Demonstrate that Montana Law Applies. .......... 6

i. Plaintiffs' "Law of the Case" Argument Fails. .......... 6

ii. Connecticut Law Applies Pursuant to the Parties' Agreement. .......... 9

b. Central's Damages Are Limited by Contract. .......... 12

i. The Contractual Limitations. .......... 12

ii. Central's Agreement Is Not a Contract of Adhesion. .......... 14

iii. Central's Agreement Is Not Unduly Oppressive. .......... 17

c. Kaman is Not Barred from Arguing a Contributory/Comparative Negligence Defense. .......... 19

i. Kaman Is Not Required to Retain a Witness on Piloting and/or Maintenance to Maintain a Contributory/Comparative Negligence Defense. .......... 19

ii. Connecticut Law Permits a Contributory/Comparative Negligence Defense. .......... 20

4. Conclusion .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All-States Leasing Co. v. Top Hat Lounge, Inc.*,
198 Mont. 1 (1982) ..........14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..........6

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) ..........8

*Barber v. Bradford Aquatic Grp. LLC,*
414 Mont. 170 (2023) ..........11, 12, 13

*Bucy v. Edward Jones & Co., L.P.*,
396 Mont. 408 (2019) ..........13

*Conn. Gen. Life Ins. Co. v. Grodsky Serv.*,
781 F. Supp. 897 (D. Conn. 1991) ..........10

*Day v. CTA, Inc.*,
2014 MT 119, 375 Mont. 79 (2014) ..........15

*Dunluck v. Assicurazioni Generali S.P.A. – UK Branch*,
590 F.Supp.3d 1293 (D. Mont. 2022) ..........18

*Highway Specialties, Inc. v. Dep't of Transp.*,
351 Mont. 527 (2009) ..........17

*Jim's Excavating Serv., Inc. v. HKM Assocs.*,
265 Mont. 494 (1994) ..........13

*Kloss v. Edward D. Jones & Co.*,
2002 MT 129, 310 Mont. 123 ..........15

*Kortum-Managhan v. Herbergers NBGL*,
2009 MT 79, 349 Mont. 475, 204 P.3d 693 ..........18

*Morris v. Walmart, Inc.*,
No. CV 22-16-BLG-SPW, 2024 WL 3784113 (D. Mont. Aug. 13, 2024) ....................6, 8, 16

*Nat'l Church v. Kapetan Inc.*,
No. CV90 0112987 S, 1992 WL 172089 (Conn. Super. Ct. July 14, 1992) ....................10

*Polzin v. Appleway Equip. Leasing, Inc.*,
345 Mont. 508 (2008) ....................17

*PTP OneClick, LLC v. Avalara, Inc.*,
413 F. Supp. 3d 1050 (W.D. Wash. 2019) ....................8

*Sivil v. Country Mut. Ins. Co.*,
619 F. Supp. 3d 1072 (D. Nev. 2022)....................7

*St. Goddard v. Helena Motors*,
No. CDV-2016-788, 2017 Mont. Dist. LEXIS 21 (Mont. First Jud. Dist. Ct. Apr. 27, 2017) ....................13

*St. Paul Mercury Ins. Co. v. Crawford & Co.*,
No. LA CV 1608462 JAKJ PRX, 2017 WL 5891047 (C.D. Cal. June 6, 2017)....................8

*Streich v. Hilton-Davis, Div. of Sterling Drug*,
214 Mont. 44 (1984) ....................13

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995) ....................7

*Winter v. Pioneer Drilling Servs., Ltd.*,
CV-14-20-GF-BMM, 2015 WL 9855923 (D. Mont. May 14, 2015) ....................13

*Woodruff v. Bretz, Inc.*,
2009 MT 329....................15

*Woody Contracting, Inc. v. Kaman Corp.*,
3:12-cv-01010-AVC, Dkt. 69 (D. Conn. Jun. 6, 2014)....................10

*Zigrang v. U.S. Bancorp Piper Jaffray, Inc.*,
2005 MT 282....................15

**Statutes**

Conn. Gen. Stat. § 42a-2-719 .......... 10, 13

Conn. Gen. Stat. § 52-572n(c) .......... 10

Conn. Gen. Stat. § 52-572o(a) .......... 20

MCA § 30-2-719 .......... 10, 13, 18

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 2, 6

Section 187(1) of the Restatement (Second) of Conflict of Laws .......... 4, 7, 8, 11

Section 187(2) of the Restatement (Second) of Conflict of Laws .......... 12

## EXHIBIT INDEX

| Exhibit | Description | Date |
|---|---|---|
| 1 | Kenneth Orloff, Ph.D., Transcript Excerpts | Feb. 19, 2025 |
| 2 | William Jacobs Transcript Excerpts | Feb. 6, 2025 |

Plaintiff Central Copters, Inc. ("Central"), a sophisticated business entity with over forty years of industry experience, has had a longstanding business relationship with Defendant Kaman Aerospace Corporation ("Defendant" or "Kaman"). Since 2006, Central and Kaman have negotiated and entered into numerous agreements relating to the sale of helicopters and helicopter parts. Tragically, Thomas Duffy, an employee-pilot with Central and the son of Central owner Mark Duffy, died while flying one such helicopter during a difficult firefighting operation in August 2020. Central[1] blames Kaman for Thomas Duffy's death, and in an effort to maximize its recovery seeks to evade its own agreements at every turn.

*First*, despite expressly agreeing that Connecticut law would govern the issue of consequential damages, Central now seeks to avoid Connecticut law allowing commercial parties to limit consequential damages. Central argues that this Court's denial of Kaman's prior request to transfer this action to the District of Connecticut at the outset of the case binds the Court now—on a wholly different issue, in a wholly different procedural context, and on a wholly different factual

[1] The claims by the other plaintiffs to this action, including Robyn Duffy, both in her individual capacity and as Personal Representative for the Estate of Thomas Duffy, and Mark and Pam Duffy, are not affected by this motion.

record—to decide that Montana law governs Central's claim to consequential damages as "law of the case." Central is mistaken.

*Second*, because the agreement between Central and Kaman includes a limitation of liability, Central argues that it is an unenforceable contract of adhesion. It isn't. The record that has been developed during discovery establishes that Central is a sophisticated party that could and did negotiate with Kaman, rendering its own agreement—and the limitation of liability provision therein—fully enforceable.

Therefore, pursuant to Federal Rule of Civil Procedure 56, the Court should deny Plaintiffs' Motion for Partial Summary Judgment (Dkt. 83, "the Motion" or "Mot.") with respect to Defendant's Affirmative Defense Nos. 4, 5 and 6.

## 1. Factual Background[2]

[redacted] (Dkt. 82, Kaman's Statement of Undisputed Material Facts ("SUMF") ¶ 66.) [redacted] (SUMF ¶¶ 16-34.) [redacted]

[2] Defendant incorporates by reference the Factual Background in its Memorandum of Law in Support of Motion for Partial Summary Judgment as to Damages. (Dkt. 81 at 2-10.)

[redacted] (SUMF ¶¶ 35-41.) [redacted] (*Id.* ¶ 42; Ex. 19, Executed 2015 Rev. Blade Sales Letter CC0029485.)

Following the accident, on September 17, 2021, Central sued Kaman in Montana despite the parties' agreement designating Connecticut as the exclusive venue for any such dispute. Central alleges that the accident was caused by defects in servo flaps on the helicopter's blades and seeks substantial damages. Kaman removed the action (Dkt. 1) and moved to dismiss it for lack of personal jurisdiction, or in the alternative, to transfer the action to the U.S. District Court for the District of Connecticut in light of the parties' agreement. (Dkt. 8.) The Court denied Kaman's motion. (Dkt. 35.) In doing so, the Court assessed whether the forum-selection clause in the parties' agreement bound the parties to a Connecticut forum and found that it did not, in part because at the time, the 2015 Commercial Price Catalog was not available to the Court. (*Id.* at 17.) The Court alternatively opined that the forum selection clause was unenforceable because "[l]ittle question exists that the contract between Kaman and Central Copters for the sale of the blades in question constitutes a contract of adhesion." (*Id.* at 19.)

Because of the exceedingly limited factual record at that time, before any discovery had been taken, the Court's decision was based on Mark Duffy's unchallenged declaration. (Dkt. 17-4.) In the declaration, Duffy stated that, "When Central Copters purchased the Blades it did not negotiate with, or even know about, any forum selection language within the terms and conditions of a 2015 Component [*sic*] Price Catalog." (*Id.* ¶ 39.) Since then, however, Duffy has been deposed, and as explained in Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 81 at 14), has testified regarding [redacted] (SUMF ¶¶ 31-32.) [redacted] (SUMF ¶ 44; Ex. 6, Duffy Tr. Excerpts 50:10-17.)

In denying Kaman's request to transfer the case to Connecticut, the Court also weighed ten factors, including "[t]he state that is most familiar with the governing law." (Dkt. 35 at 21.) In a three-sentence paragraph, the Court found that Montana law applies the most significant relationships test and concluded that the most significant relationships exist in Montana. (*Id.*) The Court did not address Section 187(1) of the Restatement (Second) of Conflicts of Law, applicable where, as here, parties have contractually agreed upon a choice of governing law.

Kaman filed its answer on April 18, 2022, asserting several affirmative defenses, including lack of personal jurisdiction, forum non conveniens or transfer, misuse of the product, Connecticut Product Liability Act, contractual limitations, contributory and/or comparative fault, alteration or modification of the K-MAX, intervening cause, and failure to mitigate damages. (Dkt. 39.)

On February 14, 2025, Plaintiffs moved for summary judgment on certain of Kaman's affirmative defenses, including misuse (Aff. Def. 3), applicability of Connecticut Product Liability Act (Aff. Def. 4), contractual limitations on liability (Aff. Def. 5), contributory/comparative fault (Aff. Def. 6), alteration or modification of the K-MAX (Aff. Def. 7), and intervening cause (Aff. Def. 8.) (Dkt. 83.)

To narrow issues for trial, Defendant hereby withdraws Affirmative Defenses Nos. 3, 7, and 8, though reserves all rights to make arguments related to causation.[3] However, for the reasons established below, the Court should deny Plaintiffs' Motion with respect to Defendant's Affirmative Defense Nos. 4, 5, and 6.

[3] Kaman has also moved for partial summary judgment against Central's consequential damages and all Plaintiffs' punitive damages claims. (Dkt. 80.)

**2. Legal Standard**

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**3. Argument**

**a. Plaintiffs Cannot Demonstrate that Montana Law Applies.**

**i. Plaintiffs' "Law of the Case" Argument Fails.**

The Court should reject Plaintiffs' argument that the Court has already decided the governing law applicable to whether Central may recover consequential damages in this case. Plaintiffs point to the Court's order denying Defendant's motion to transfer the case to the District of Connecticut (Dkt. 35) and argue that its decision controls the issue of consequential damages as "law of the case." (Mot. at 19.) They are wrong.

Pursuant to the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Morris v. Walmart, Inc.*, No. CV 22-16-BLG-SPW,

2024 WL 3784113, at *4 (D. Mont. Aug. 13, 2024) (rejecting application of the law of the case doctrine). But "under the rule of dépeçage, courts determine which state's laws apply to each claim or issue in a case, rather than making a blanket decision to cover all claims." *Sivil v. Country Mut. Ins. Co.*, 619 F. Supp. 3d 1072, 1076 (D. Nev. 2022).

Plaintiffs' law-of-the-case argument assumes that the Court faces the same issue it did in assessing Defendant's motion to dismiss or transfer. Not so. There, the Court decided what law governs the issue of venue. Here, the Court must decide what law governs damages. These are two different issues, and pursuant to the principle of dépeçage, the Court can apply different law to govern these issues. Because it is not the same issue before the Court, the "law of the case" theory does not even apply.

But even if the Court were revisiting the same issue, the Court did not actually consider and decide the choice-of-law question using the relevant choice-of-law analysis. The purpose of the law-of-the-case doctrine is to "promote judicial finality," and as such, it forecloses reconsideration of issues that were "*actually considered and decided* by the first court." *United States v. Cote,* 51 F.3d 178, 181 (9th Cir. 1995) (emphasis added). Importantly, the Court previously did not address Restatement § 187(1), which governs where, as here, the parties have chosen the applicable law to govern their contractual rights and duties. Thus, the

Court has not yet done the necessary analysis to determine which state's law applies and should do so now under Restatement § 187(1) and based on a factual record that, unlike before, has been developed through extensive discovery. *See PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1068 (W.D. Wash. 2019) ("Choice-of-law is fact-intensive inquiry that does not lend itself readily to disposition" on a motion to dismiss); *St. Paul Mercury Ins. Co. v. Crawford & Co.*, No. LA CV 1608462 JAKJ PRX, 2017 WL 5891047, at *3–4 (C.D. Cal. June 6, 2017) (denying motion as to choice of law issue as premature and without prejudice to reraising the issue on a developed factual record).

Even if the Court had analyzed and decided the issue of which state's law should govern the issue of consequential damages under Restatement § 187(1), "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). A court may depart from the law of the case if: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Morris*, 2024 WL 3784113, at *4. Several of these factors are present here. At the time the Court denied Defendant's motion to transfer on a motion to dismiss, the factual record had not yet been developed, and the Court did not have access to the 2015

Commercial Price Catalog, which was a factor in the Court's decision that the agreement's forum selection clause did not bind the parties. (Dkt. 35 at 17.) Further, based on the limited record available at the time, the Court found that the contract was one of adhesion, and therefore any forum selection clause was unenforceable. (*Id*. at 19.) But as discussed above, this was based on Mark Duffy's unchallenged declaration that he was unaware of the forum selection clause. (Dkt. 17-4.) Since then, Mark Duffy has provided deposition testimony explaining [redacted] (SUMF ¶ 31-33.)

**ii. Connecticut Law Applies Pursuant to the Parties' Agreement.**

[redacted]. (SUMF ¶ 42; Ex. 19, Executed 2015 Rev. Blade Sales Letter CC0029485.) [redacted] (*Id.* ¶ 48; Ex. 22, 2015 Kaman Commercial Price

Catalog KAM-0000054538.) And under the Connecticut Product Liability Act ("CPLA"), "[a]s between commercial parties, commercial loss caused by a product . . . may not be recovered by a commercial claimant in a product liability claim." Conn. Gen. Stat. § 52-572n(c). This includes "consequential economic damages," *Conn. Gen. Life Ins. Co. v. Grodsky Serv.*, Inc., 781 F. Supp. 897, 901 (D. Conn. 1991), such as lost profits "resulting from the loss of use of the aircraft," *Woody Contracting, Inc. v. Kaman Corp.*, 3:12-cv-01010-AVC, Dkt. 69 (D. Conn. Jun. 6, 2014). Thus, the consequential damages sought by Central are not permissible under Connecticut product liability law.

Instead, "[a]n action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code." Conn. Gen. Stat. § 52-572n(c); *see also Nat'l Church v. Kapetan Inc.*, No. CV90 0112987 S, 1992 WL 172089, at *1 (Conn. Super. Ct. July 14, 1992) (explaining that pursuant to the CPLA, an action for commercial losses caused by a product is to be brought under the UCC, which "provides that parties may contractually agree to the remedies to which they are entitled"). And under the UCC, whether Connecticut's or Montana's, parties can limit the damages available to the contracting parties, as Central and Kaman did here. Conn. Gen. Stat. § 42a-2-719; § 30-2-719, MCA.

Ostensibly recognizing that fact, Central does everything it can to circumvent its own express agreement. However, as Central acknowledges, "parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws," including with respect to choice-of-law provisions (Mot. at 30); *see also Barber v. Bradford Aquatic Grp. LLC*, 414 Mont. 170, 175 (2023). There is no dispute that in deciding the validity of a choice-of-law provision, Montana follows the Restatement (Second) of Conflict of Laws, and because the parties' agreement contained a choice-of-law provision, one must first look to Restatement § 187(1). Plaintiffs conspicuously sidestep Restatement § 187(1) altogether, inviting error by arguing instead for the application of the "most significant relationship." (Mot. at 20.) According to Restatement § 187(1), the "laws of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Here, Connecticut law thus applies.

Even where the particular issue "is one which the parties could not have resolved by an explicit provision," the Restatement still applies "[t]he law of the state chosen by the parties to govern their contractual rights and duties," unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "(b)

application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2). Neither exception applies here. As explained in Kaman's Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 80 at 19-20), Connecticut has a clear relationship to the parties and the transaction as Kaman is headquartered in Connecticut and sent Central the 2015 Blades Sales Agreement from Kaman's Bloomfield, Connecticut location. And applying the CPLA and UCC would not contravene a fundamental Montana policy since under Montana law, "parties enjoy a broad freedom to contract around the terms of their private dealings," including by limiting or excluding damages. *Barber*, 414 Mont. at 175. Therefore, the Restatement approach confirms that Connecticut law, not Montana law, applies.

**b. Central's Damages Are Limited by Contract.**

**i. The Contractual Limitations.**

Central argues that the contractual limitations on damages in its own agreement does not apply to its claims, because "[p]laintiffs in Montana are not prevented from recovering for purely economic losses in tort." (Mot. at 28.) But Central once again ignores the fact that commercial "parties enjoy a broad freedom to

contract around the terms of their private dealings," including with respect to limitation of liability, which is exactly what Central and Kaman have done here. *Barber*, 414 Mont. at 175.[4]

Again, according to the UCC adopted by both Connecticut and Montana, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Conn. Gen. Stat. § 42a-2-719; § 30-2-719, MCA.[5] A contract or included term is only unconscionable if: "(1) the contract or term is a contract or term of adhesion ***and*** (2) unreasonably favors the stronger party or is

---

[4] Central argues that the economic loss doctrine does not apply in Montana and therefore Central is not barred from seeking consequential damages. The argument is a red herring, however, because the parties expressly agreed otherwise. Plaintiffs cite *Streich v. Hilton-Davis, Div. of Sterling Drug*, 214 Mont. 44, 51 (1984), for the proposition that strict liability is not governed by the UCC. What the Court actually held, however, is that in strict liability torts cases, plaintiffs could pursue recovery of purely economic losses and were not limited to the damages available under the UCC. *Id.* *Streich* did not hold that parties cannot contractually disclaim liability for purely economic losses, which is clearly permissible both because of the parties' general freedom to contract and separately under the UCC. Further, neither of the other cases Central relies on appear to involve an express contractual provision limiting liability. *See Jim's Excavating Serv., Inc. v. HKM Assocs.*, 265 Mont. 494, 501 (1994) (determining whether plaintiff was permitted to sue in tort for purely economic losses where there was "no contractual privity" between the parties); *see also St. Goddard v. Helena Motors*, No. CDV-2016-788, 2017 Mont. Dist. LEXIS 21 (Mont. First Jud. Dist. Ct. Apr. 27, 2017).

[5] Because there is no actual conflict as between Connecticut and Montana concerning this aspect of the UCC, a choice-of-law analysis is unnecessary on this issue. *See Winter v. Pioneer Drilling Servs., Ltd.*, CV-14-20-GF-BMM, 2015 WL 9855923, at *1 (D. Mont. May 14, 2015).

unduly oppressive to the weaker party." *Bucy v. Edward Jones & Co., L.P.*, 396 Mont. 408, 427 (2019) (emphasis added); *see also All-States Leasing Co. v. Top Hat Lounge, Inc.*, 198 Mont. 1, 6 (1982). For the reasons explained below, Central's contract is not a one of adhesion, and it is not unduly oppressive to Central.

**ii. Central's Agreement Is Not a Contract of Adhesion.**

As Central acknowledges, "contracts of adhesion arise when a party possessing power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms." (Mot. at 30.) That is indisputably not what happened here. To the contrary, and as established in Kaman's Memorandum of Law in Support of its Motion for Partial Summary Judgment, [redacted] (Dkt. 81 at 13-14). [redacted] (SUMF ¶¶ 18-19.) [redacted] (*Id.* ¶¶ 20-22.) [redacted]

[redacted]. (*Id.* ¶¶ 31-33.)

None of the cases cited by Central support the theory that it somehow lacked bargaining power. *See Zigrang v. U.S. Bancorp Piper Jaffray, Inc.*, 2005 MT 282, ¶ 15 (finding that elderly woman with no experience in investment services has no bargaining power when presented with standardized form agreement on a take it or leave it basis); *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 37, 310 Mont. 123, 135 (finding contract of adhesion where one party was a 95 year old widow with no bargaining power and a relative lack of sophistication in buying and selling securities); *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 10 (finding contract to purchase motor home was a contract of adhesion where plaintiff was "an ordinary citizen" with a "relative lack of sophistication"). Central is not an elderly widow or an ordinary citizen with no bargaining power; it is a sophisticated business entity with 40 years of experience in the industry. Another case cited by Plaintiffs—*Day v. CTA, Inc.*, 2014 MT 119, ¶ 4, 375 Mont. 79, 80 (2014)—found that the standard form contract at issue was *not* a contract of adhesion, because the purportedly weaker party was a sophisticated securities attorney, who, despite having no recollection of reading the contract, did not lack bargaining power. While Central

contends that it did not read the contract at issue, it strains credulity to suggest that it lacked bargaining power.

Plaintiffs put all their eggs in the basket of the language this Court used previously when denying Kaman's venue motion. Specifically, in its Order denying Kaman's motion to dismiss or transfer, the Court stated in dicta that "[l]ittle question exists that the contract between Kaman and Central Copters for the sale of the blades in question constitutes a contract of adhesion." (Dkt. 35 at 19.) Importantly, however, this was based on a completely different—and very limited record—at the time. At that point, the Court relied on a single declaration submitted by Mark Duffy, i.e., testimony not subjected to any examination or cross-examination (Dkt. 17-4). Since then, Kaman has taken substantial discovery, including Duffy's deposition, [redacted] (SUMF ¶¶ 31-33; Ex. 6 Duffy Tr. Excerpts 50:10-17.) Even if the Court's dicta regarding the contract was somehow "law of the case," it may now depart from it given that "the evidence [] is substantially different" and "other changed circumstances exist." *Morris*, 2024 WL 3784113, at *4.

### iii. Central's Agreement Is Not Unduly Oppressive.

Even a contract of adhesion is enforceable unless it is also "unreasonably favorable to the drafter, which is generally determined by whether the provision was within the reasonable expectations of, or unduly oppressive to, the weaker party." *Highway Specialties, Inc. v. Dep't of Transp.*, 351 Mont. 527, 532 (2009). Central cannot establish that its agreement meets those requirements.

The limited-liability and choice-of-law provisions at issue here were well within Central's reasonable expectations. They are clear and unambiguous contract terms, readily identifiable and present in multiple contracts negotiated between the parties. Just because Duffy chose not to read them does not render them unenforceable. *See Polzin v. Appleway Equip. Leasing, Inc.*, 345 Mont. 508, 515 (2008) ("Failure to read and understand a clear and ambiguous agreement, absent mistake, is not a defense to its enforcement.").

Further, these are standard contract terms, and Central has repeatedly entered into agreements subject to the same terms in its over forty years in business generally, and during its twenty-year relationship with Kaman more specifically. *See Polzin*, 345 Mont. at 515 (noting plaintiff reasonably should have expected choice-of-law provisions where plaintiff was in business for nearly twenty years, often entered into purchase agreements to obtain vehicles for his business, and contracted with defendant to do so on multiple occasions).

In addition, the contractual limitations were not "unduly oppressive" or against public policy when the agreements were made. As explained in Kaman's Motion for Partial Summary Judgment, a policy contravenes Montana public policy only "when its application would occasion a result that is clearly forbidden by Montana law," as where (1) "a contractual choice-of-law provision" is "applied to validate a clause in the contract that would clearly violate Montana law," or where (2) "a contractual choice of law provision" is "applied so as to remove from a contract any essential aspect required under Montana law." *Dunluck v. Assicurazioni Generali S.P.A. – UK Branch*, 590 F.Supp.3d 1293, 1301-02 (D. Mont. 2022). Nothing about the limitation-of-liability provision clearly violates Montana law or removes an essential aspect required under Montana law, which expressly recognizes that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable," which "limitation of damages where the loss is commercial is not." § 30-2-719, MCA. Plaintiffs have not identified a single case holding such a provision unconscionable under the Montana UCC. *See Kortum-Managhan v. Herbergers NBGL*, 2009 MT 79, ¶ 28, 349 Mont. 475, 483, 204 P.3d 693, 699 (finding arbitration clause in contract of adhesion unenforceable because it waives a *consumer's* right to a jury).

### c. Kaman is Not Barred from Arguing a Contributory/Comparative Negligence Defense.

#### i. Kaman Is Not Required to Retain a Witness on Piloting and/or Maintenance to Maintain a Contributory/Comparative Negligence Defense.

Plaintiffs also contend that, in order for Kaman to argue that Thomas Duffy's negligence contributed to the accident at issue, Kaman would need to present expert testimony specifically addressing the inadequacy of his piloting and/or Central's maintenance of its K-MAXs. (Mot. at 34-35.) Not so. Kaman is under no obligation to present expert testimony regarding Thomas Duffy's piloting skills per se, and Plaintiffs do not point to any authority otherwise. Rather, Kaman's liability experts argue that, based on the evidence, a tree strike was the most likely cause of Mr. Duffy's accident. (Ex. 82-4, Orloff Rep.; Ex. 1, Orloff Tr. Excerpts 108:9-12.) To the extent that the jury agrees, it follows that Mr. Duffy's actions in striking the tree caused (or at least contributed to) the accident.

Further, Plaintiffs cannot dispute that, as part of maintaining and flying a K-MAX helicopter, Central was required to inspect the aircraft for any cracking. Ex. 85-12 to 85-17, Operations Manual; Ex. 2, Jacobs Tr. Excerpts 26:15-16 ("[redacted]]"); *id.* at 33:5-10 (testifying that [redacted]"). Yet they have proffered a theory that the

servo flap cracked at some point, thus permitting a jury to consider all evidence to conclude that Central may have missed cracks pre-flight and, consequently, never should have flown the aircraft that day. Kaman thus is not barred from arguing a contributory/comparative negligence defense on such grounds rooted in the facts discovered in this case.

**ii. Connecticut Law Permits a Contributory/Comparative Negligence Defense.**

Central argues in the alternative that Montana law bars contributory negligence as a defense in strict products liability cases. However, as explained above and in Defendant's Motion for Partial Summary Judgment, Connecticut law governs the dispute. The CPLA states that "[i]n any claim under sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery *but shall diminish the award of compensatory damages proportionately*, according to the measure of responsibility attributed to the claimant." Conn. Gen. Stat. Section 52-572o(a) (emphasis added). Thus, to the extent that Defendants are found liable but can show that Central's maintenance or Thomas Duffy's piloting caused and/or contributed to the accident, damages should be reduced accordingly.

**4. Conclusion**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment with respect to Defendant's Affirmative Defenses Nos. 4, 5 and 6.

Dated this 7th day of March 2025.

*/s/ Mark S. Williams*
Mark S. Williams
Williams Law Firm, P.C.

Kevin M. Smith, *pro hac vice*
Robyn Gallagher, *pro hac vice*
Wiggin and Dana LLP
20 Church Street
Hartford, CT 06103
(203) 498-4579
(475) 201-2125
ksmith@wiggin.com
rgallagher@wiggin.com

*Attorneys for Kaman Aerospace Corporation*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing support brief complies with the 6,500 word limit set forth in L.R. 7.1(d)(2)(A), in that it consists of 4,718 words as calculated by Microsoft Word for Microsoft 365, including the parts of the brief exempted by the rule; and with L.R. 1.5(a), in that it is double spaced except for quoted material and footnotes, and typewritten in 14-pt font size.

Dated this 7th day of March 2025.

/s/ *Mark Williams*
Mark Williams, Esq.
Attorney for Defendant