# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| ROBYN DUFFY, individually and as Personal Representative of the Estate of Thomas Duffy, on behalf of the Estate of Thomas Duffy and the Heirs of Thomas Duffy, C.D., S.D., and M.D., the minor children of Robyn and Thomas Duffy, and MARK DUFFY and PAM DUFFY, the parents of Thomas Duffy; and CENTRAL COPTERS, INC., a Montana corporation,<br><br>            Plaintiffs,<br><br>  v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware Corporation,<br><br>            Defendants. | No. 2:21-CV-71-BMM<br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Robyn Duffy, as personal representative of the estate of Thomas Duffy, Mark and Pam Duffy, the parents of Thomas Duffy, and Central Copters, Inc., (collectively "Plaintiffs") have filed a Motion for Summary Judgment. (Doc.

1

83.) Defendant Kaman Aerospace Corporation ("Kaman") opposes the Motion. (Doc. 141.) The Court held a hearing on the motion on March 17, 2025. (Doc. 194.)

## BACKGROUND

This case involves a lawsuit filed by Robyn Duffy, as the Personal Representative of the Estate of Thomas Duffy ("Duffy"), along with their minor children, Thomas's parents Mark and Pam Duffy, and Central Copters, Inc. ("Central") against Kaman. (Doc. 38 at 1–2.) Mark and Pam Duffy own Central and employed Thomas. (*Id.*) Duffy was an experienced helicopter pilot who was killed in a helicopter crash on August 24, 2020, while fighting a wildfire in Oregon's Mount Hood National Forest. (*Id.* at 2.)

Plaintiffs allege that a defectively designed, manufactured, and marketed servo flap on the blades of the K-MAX helicopter manufactured by Kaman caused the crash. (*Id.* at 2.) Plaintiffs claim that Kaman knew of a previous similar accident involving the same model of K-MAX helicopter but failed to inform Duffy or Central. Plaintiffs allege that Kaman's failure to inform deprived them of the opportunity to make an informed decision about the helicopter's airworthiness. (*Id.* at 2–3.)

Plaintiffs allege that Duffy's death has caused significant grief and loss to his family, including his wife, children, and parents, who are all residents of Gallatin County, Montana. (*Id.* at 3–4.) Central, a Montana corporation, owned the K-MAX

2

helicopter and alleges that they have suffered damages due to the loss of use of other K-MAX helicopters. (*Id.* at 4.)

Plaintiffs allege that Kaman, a Delaware corporation with its principal place of business in Connecticut, engaged in the business of designing, manufacturing, and selling the K-MAX helicopter. (*Id.* at 4–5.) The Court properly exercises jurisdiction over the case, and the venue remains proper in Gallatin County, Montana. (*Id.* at 5–6; *see also* Doc. 35.) Plaintiffs seek to hold Kaman accountable for the defective product and its wrongful actions, claiming damages for the loss of Duffy and the impact on Central's operations. (Doc. 38 at 6–7.)

## STANDARD OF REVIEW

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

Plaintiffs make six arguments in their summary judgment motion related to excluding Kaman's affirmative defenses. (Doc. 84.) Plaintiffs argue first that Kaman's third affirmative defense of misuse fails as a matter of law. (*Id.* at 14–18.)

3

Plaintiffs next contend that Kaman's fourth affirmative defense asserting that the Connecticut Product Liability Act ("CTPLA") bars Plaintiffs' claims fails because Montana law applies. (*Id.* at 18–27.) Plaintiffs allege third that Kaman's fifth affirmative defense regarding Kaman's Commercial Price Catalog limitation of Plaintiffs' damages fails. (*Id.* at 27–34.) Plaintiffs contend fourth that Kaman's sixth affirmative defense regarding contributory and comparative negligence fails because Kaman did not disclose appropriate experts, and the defense cannot be used in strict liability cases. (*Id.* at 34–37.) Plaintiffs argue fifth that Kaman's eighth affirmative defense regarding intervening conduct fails because Montana law rejects such a defense. (*Id.* at 37–38.) Plaintiffs argue finally that Kaman's seventh affirmative defense fails because no evidence supports the claim that Central modified the K-MAX that crashed. (*Id.* at 38–39.) Kaman withdrew its third, seventh, and eighth affirmative defenses in its response to Plaintiffs' motion. (Doc. 142 at 5.) The Court will address the remaining three affirmative defenses in turn.

### I.  Kaman's Fourth Affirmative Defense Regarding the Connecticut Product Liability Act

Plaintiffs argue that Kaman's Fourth Affirmative Defense, which asserts that the CTPLA bars the claims, fails because Montana law applies. (Doc. 84 at 18–24.) Kaman largely repeats arguments in its summary judgment motion regarding the applicability of the CTPLA. (*See* Doc. 81 at 18–22.) The Court has addressed this

4

issue in its Order regarding Kaman's summary judgment motion. (*See* Doc. 205 at 4–9.) The Court will not repeat its analysis regarding whether Montana or Connecticut law applies. Connecticut law does not apply. Montana law applies (*Id.*) Kaman is precluded from asserting its fourth affirmative defense.

## II. Kaman's Fifth Affirmative Defense Regarding Contractual Limitations of Damages

The arguments raised by Kaman and Plaintiffs essentially repeat the arguments made in Kaman's summary judgment motion. (*See* Doc. 81; Doc. 162.) The Court addressed this issue in its Order regarding Kaman's summary judgment motion. (*See* Doc. 205 at 3–15.) The Court will not repeat its analysis regarding the contractual limitations on damages. The contract between the parties does not limit Plaintiffs' damages claims. Plaintiffs' damages claims arise from strict liability. (*Id.*) Kaman is precluded from asserting its fifth affirmative defense.

## III. Kaman's Sixth Affirmative Defense Regarding Contributory and Comparative Negligence

Plaintiffs argue that Kaman's contributory and comparative negligence defense requires expert testimony on the piloting and maintenance of the K-MAX helicopter. Plaintiffs note that Kaman failed to disclose an expert on the piloting and maintenance of the K-MAX helicopter. Plaintiffs contend that Kaman's failure to retain an expert on the piloting and maintenance of the K-MAX helicopter defeats this defense. (Doc. 84 at 34.)

Plaintiffs assert that the technical nature of piloting and maintaining the K-MAX falls outside the common understanding of a jury. (*Id.* at 34–35.) Kaman's disclosed experts, Dr. Orloff and Dr. Kostmatka, provided no opinions on the standard of care or breach thereof for piloting and maintaining the K-MAX helicopter. (*Id.*) Plaintiffs also argue that contributory negligence provides no defense in strict product liability cases under Montana law. (*Id.* at 35–36.)

Plaintiffs rely on *Dubeil v. Mont. DOT* to assert that Kaman must use an expert witness on piloting and maintenance to raise contributory and comparative negligence. 272 P.3d 66 (Mont. 2012). *Dubeil* involved the decedent's death when a tree fell during a windstorm on the car that the decedent was driving. *Id.* at 68. The decedent's wife filed a negligence and a wrongful death action against the Montana Department of Transportation ("MTD"), claiming that MTD had failed to close the highway in a timely manner. *Id.*

The Montana state trial court granted summary judgment for MDT because the plaintiff did not plan to call an expert witness to testify about MDT's standard of care. *Id.* The Montana Supreme Court affirmed. *Id.* at 67. The Montana Supreme Court reasoned that expert testimony was necessary to prove that MDT had breached its standard of care where "numerous interrelated factors that must be considered by MDT in making a decision to close a road, many of which are not readily apparent to a layman." *Id.* at 70.

One other case upon which Plaintiffs rely proves instructive in determining the parameters of Kaman's sixth affirmative defense. *Speaks v. Mazda Motor Corp.* involved a car accident. 118 F. Supp. 3d 1212, 1216 (D. Mont. 2015). The plaintiff alleged that the defective design of the automatic seatbelt in the car caused her injuries. *Id.* The defendant asserted an affirmative defense of contributory negligence because the plaintiff had routed the seatbelt under the plaintiff's arm instead of over the plaintiff's shoulder due to the plaintiff's small stature. *Id.* at 1223. The defendant withdrew its affirmative defense, but argued that the evidence upon which the defendant based its affirmative defense was proper to "contest the element of causation." *Id.* at 1224–25.

The court determined "that 'contributory negligence is not a defense' for defendants in strict products liability cases." *Id.* at 1225 (citing Mont. Code Ann. § 27-1-719(5). The defendant was prohibited from arguing or contending that the plaintiff's negligence contributed to the plaintiff's injuries. *Id.* The court reasoned, however, that the ruling did not preclude the defendant from introducing "evidence of under-the-arm routing . . . for the limited purpose of allowing [the defendant] to contest the element of causation." *Id.* The court stated that "such evidence may be admitted *to the extent that* [the plaintiff's] theory for design defect is based on the improper fit of the seatbelt on people of small stature, even when properly worn."

7

*Id.* (citing *Bell v. Glock, Inc.,* 92 F. Supp. 2d 1067, 1071 (D.Mont.2000)) (emphasis in the original).

Montana law remains clear. Contributory negligence provided no affirmative defense in strict product liability cases when this action was filed. Mont. Code Ann. § 27-1-719(5) (2021). Kaman may not assert contributory negligence as an affirmative defense. The Court's ruling must be framed in the proper context, in this case around the issue of causation. Kaman argues that the evidence of an alleged tree strike and alleged failure to inspect the servo flap may have contributed to the K-MAX crash. This type of evidence differs from the evidence in *Dubeil*. *Dubeil* dealt with the "numerous interrelated factors" that MDT used in making its decision to close a road. 272 P.3d at 70. *Dubeil* addressed the question of whether MDT had breached its standard of care. The present case does not deal with a breach of standard of care. Breach is not an element in strict product liability. *See e.g.*, *Teague v. Remington Arms Co., LLC*, 2022 WL 16574241 at *5 (D. Mont. Nov. 1, 2022) (citing Mont. Code Ann. § 27-1-719). Kaman seeks to present evidence that relates to what may have caused the K-MAX crash. Kaman's experts are equipped to present that evidence.

In granting Plaintiffs' motion for summary judgment regarding Kaman's sixth affirmative defense of contributory negligence, the Court does not intend to prevent Kaman from contesting causation with evidence of an alleged tree strike and alleged

failure to inspect the servo flap. *Speaks*, 118 F. Supp. 3d at 1125. The Court decides only that Kaman may not argue or imply that Duffy's piloting of the K-MAX helicopter or Central's inspection of the K-MAX helicopter had been *negligent* or that Duffy's or Central's alleged *negligence* caused the crash. *Id.* As in *Speaks,* "[t]he ultimate admissibility of evidence related to" the alleged tree strike and alleged failure to inspect the servo flap "will depend on how [Plaintiffs] present[] [their] design defect claim." *Id.*

## CONCLUSION

The Court declines to apply Kaman's fourth and fifth affirmative defenses. The Court previously ruled that Montana law, not Connecticut law, applies. (*See* Doc. 205.) Montana law prohibits Kaman's sixth affirmative defense of contributory negligence. Kaman may present evidence of the alleged tree strike and alleged failure to inspect the servo flap for the limited purpose of contesting causation.

## ORDER

Accordingly, **IT IS ORDERED** Plaintiffs' Motion for Partial Summary Judgment (Doc. 83) is **GRANTED**.

DATED this 3rd day of April, 2025.

_____
Brian Morris, Chief District Judge
United States District Court