## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

ROBYN DUFFY, individually and as Personal Representative of the Estate of Thomas Duffy, on behalf of the Estate of Thomas Duffy and the Heirs of Thomas Duffy, C.D., S.D., and M.D., the minor children of Robyn and Thomas Duffy, and MARK DUFFY and PAM DUFFY, the parents of Thomas Duffy; and CENTRAL COPTERS, INC., a Montana corporation,

Plaintiffs,

v.

KAMAN               AEROSPACE
CORPORATION,      a      Delaware
Corporation

Defendants.

No. 2:21-CV-71-BMM

ORDER

## INTRODUCTION

Defendant Kaman Aerospace Corporation ("Kaman") filed motions in limine on various topics. (Doc. 116; Doc. 118; Doc. 120; Doc. 121; Doc. 124; Doc. 126.) Plaintiffs Robyn Duffy, as personal representative of the estate of Thomas Duffy (collectively "Estate"), Mark and Pam Duffy, the parents of Thomas Duffy, and

Central Copters, Inc. (collectively "Central"), (collectively, "Plaintiffs"), partially oppose the motions. Plaintiffs filed motions in limine on various topics. (Doc. 104; Doc. 114; Doc. 118.) Kaman partially opposes. The Court held a motion hearing on March 17, 2025. (Doc. 194.)

## BACKGROUND

This case involves a lawsuit filed by Robyn Duffy, as the Personal Representative of the Estate of Thomas Duffy ("Tom"), along with their minor children, Thomas's parents Mark and Pam Duffy, and Central Copters, Inc. against Kaman Aerospace Corporation. (Doc. 38 at 1–2.) Central Copters is owned by Mark and Pam and employed Thomas. (*Id.*) Tom was an experienced helicopter pilot who was killed in a helicopter crash on August 24, 2020, while fighting a wildfire in Oregon's Mount Hood National Forest. (*Id.* at 2.) Plaintiffs allege that a defectively designed, manufactured, and marketed servo flap on the blades of the K-MAX helicopter caused the crash. (*Id.* at 2.) Kaman manufactured the allegedly defective servo flap. (*Id.*) Plaintiffs claim that Kaman knew of a previous similar accident but failed to inform Tom or Central, depriving them of the opportunity to make an informed decision about the helicopter's airworthiness. (*Id.* at 2–3.)

Plaintiffs allege Tom's death has caused significant grief and loss to his family, including his wife, children, and parents, who are all residents of Gallatin County, Montana. (*Id.* at 3–4.) Central Copters, a Montana corporation, owned the

K-MAX helicopter and allege that they have suffered damages due to the loss of use of its helicopters. (*Id.* at 4.)

Plaintiffs allege that Kaman, a Delaware corporation with its principal place of business in Connecticut, engaged in the business of designing, manufacturing, and selling the K-MAX helicopter. (*Id.* at 4–5.) The Court has jurisdiction over the case, and the venue is proper in Gallatin County, Montana. (*Id.* at 5–6; *see also* Doc. 35.) Plaintiffs seek to hold Kaman accountable for the alleged defective product and its wrongful actions, claiming damages for the loss of Tom and the impact on Central's operations. (Doc. 38 at 6–7.)

## LEGAL STANDARD

Motions in limine ("MIL") serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Motions in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only where "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F.Supp.3d

1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab*., 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010)). Evidentiary rulings should be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. Deferring ruling on motions in limine allows a Court to place "questions of foundation, relevancy and potential prejudice in proper context." *Id*. (internal quotations omitted). A court may alter its ruling to exclude evidence if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

### I.    Kaman's MIL #8 to preclude evidence of post-litigation conduct

Kaman seeks to bar Plaintiffs from introducing evidence of Kaman having sued Plaintiffs in Connecticut federal court to recover on unpaid invoices and a dispute over payment regarding fixing the out-of-warranty servo flaps. (Doc. 117 at 2-3.) Plaintiffs assert that its request for the servo flap repair relates to showing that cracks were present in other servo flaps and the design was defective on more than one blade. (*Id*.)

Central bought parts from Kaman, in 2021, right before Central's Crash that valued over $500,000. (Doc. 117 at 3.) The purchase agreement required Central to pay within 30 days. Kaman alleged that Central failed to pay as required by the terms

of the purchase agreement. (*Id*.) Central sought repairs to servo flaps after discovering new defects on a different K-MAX after Central's Crash. (Doc. 156 at 2.) Central also sought replacement parts for servo flaps on other K-MAX helicopters in its fleet. (*Id.*) Kaman repaired the defective servo flap at no cost to Central but refused to take back the other servo flap parts from K-MAX helicopters and refund Central. (*Id*.) Central attempted to return the unused parts when it decided to ground its K-MAX fleet after Central's Crash. (*Id*.)

Kaman sued Central in Connecticut to recover on the unpaid account. The parties entered into a settlement agreement. The settlement agreement permitted the parties to introduce evidence of the invoices in potential future litigation. (*Id*. at 3.) The parties entered a stipulation of dismissal in July 2024. (Doc. 117 at 3.)

Central still possessed the K-MAXs in 2024 but did not use them in its operations. Central returned servo flap parts to Kaman and asked Kaman to repair the servo flaps under warranty. (Doc. 117 at 3.) Central attempted to sell the extra K-MAX blades to a Japanese company, Akagi Helicopter Co., Ltd. (*Id*.) Kaman refused to repair the K-MAX blades as the warranty period had expired and demanded a $70,000 payment for the costs of repair. Central alleges that the servo flaps were showing signs of cracking similar to the ones that apparently caused Central's Crash. (Doc. 156 at 3.)

Kaman argues that Plaintiffs should be precluded from introducing any evidence related to the repair request in an effort to show that Kaman had acted in bad faith or had refused to take responsibility for its products. Kaman also seeks to prohibit discussion and testimony about the length of litigation and suggestions that Kaman should have settled the case. Plaintiffs also assert that the length of the litigation relates to its efforts to assess damages suffered, especially emotional loss and impacts on Central's business.

Kaman cites the rules of evidence regarding relevant evidence and the balancing test under Fed. R. Evid. 402 to argue that evidence of other litigation involving Kaman and Central should be excluded. (Doc. 117 at 4.) The interactions between Kaman and Central show the extent of their business relationship and how the regularly Kaman and Central did business. The parties also apparently did not restrict use of unpaid invoices in subsequent litigation. (Doc. 185 at 3.) The prejudicial effect on Kaman likely will be minimal, as it will show only that Kaman sought to enforce its agreement with Central. The Court reserves ruling until trial on the extent to which the parties may refer to the Connecticut litigation.

The Court reserves ruling until trial evidence relating to Central's attempt to have Kaman repair or replace the other allegedly defective servo flaps under warranty so that it could sell the servo flaps. The Court also lacks the appropriate context and reserves ruling until trial on issues regarding Central's apparent attempt

to mitigate damages and Kaman's attempt to recover payment owed under the parts contracts.

The Court also must reserve ruling on Kaman's request to prohibit Plaintiffs from commenting on the length, stress, or costs of litigation. The parties removed this action from Montana state court in September 2021. Central's Crash happened in 2020. The length of the trial and costs associated with it relate to the amount of time both the parties and counsel have spent on litigating the case. Plaintiffs seek emotional damages which may relate to the length and costs of litigation. Plaintiffs also seek punitive damages that may involve discussion of Kaman's knowledge of alleged defective parts and its inaction. The Court reserves ruling on the admissibility of evidence regarding the length, costs, or stress of the litigation until trial to ensure the proper context.

## II.    Kaman's MIL #9 to preclude evidence that Tom's death caused Robyn Duffy-Carlson's cancer

Kaman seeks to preclude Plaintiffs from offering evidence that Robyn Duffy-Carlson's cancer was caused by the death of her husband Tom. (Doc. 120.) Plaintiffs generally do not oppose excluding testimony that Tom's death caused Robyn's cancer. (Doc 137.) Plaintiffs assert that evidence of Robyn's pain and suffering will be required to support their claim for pain and suffering damages and that will necessarily include her battle with cancer. (*Id*. at 2.) Plaintiffs shall not

argue that Tom's death caused Robyn's cancer, or that Kaman's negligence or misconduct caused Robyn's cancer. Plaintiffs may discuss Robyn's pain and suffering after Central's Crash, which may include her battle with cancer.

## III.    Kaman's MIL #10 to preclude Plaintiffs from offering or eliciting witness testimony regarding the credibility of other witness testimony

Kaman seeks to preclude Plaintiffs' witnesses from testifying on the credibility of other witnesses. (Doc. 123 at 2.) Plaintiffs concede that neither party's witnesses shall comment on the credibility of other witnesses. (Doc. 136 at 2.) Plaintiffs argue that counsel should be able to comment on witness credibility during closing arguments, or other witness testimony regarding the believability of other witnesses who they have had contacts with.   The Court will take the approach adopted in *Agan v. BNSF Ry. Co.* and will allow counsel narrowly to highlight conflicting testimony or "draw comparisons between witnesses' testimony and other evidence" but may not offer personal opinions on witness credibility. No. CV 19-83-BLG-SPW, 2022 WL 3700052, at *3 (D. Mont. Aug. 26, 2022) Both parties also shall not elicit testimony from witnesses as to other witnesses' credibility but may inquire about how their testimony might differ. The Court reserves ruling until trial on any other specific testimony regarding witness credibility.

## IV.    Kaman's MIL #11 to bifurcate Plaintiffs' claim for punitive damages

Kaman seeks to bifurcate the question of punitive damages. (Doc. 125 at 4.) Kaman argues that Plaintiffs claim for punitive damages will fail for lack of actual malice on behalf of Kaman and for the fact that Central contractually agreed to limit punitive damages. (*Id.*) Plaintiffs intend to argue that Kaman intentionally disregarded Plaintiffs safety by failing to fix the known servo flap defects. (Doc. 151 at 2-3.) Plaintiffs argue that the factual evidence present in the case supports both liability and punitive damages and the question of whether to award punitive damages should go to the jury. (*Id.*)

The Court previously determined that a dispute exists regarding material facts related to punitive damages and denied Kaman's motion for summary judgment on those grounds. (Doc. 205.) Both Kaman's experts and Plaintiffs' experts agree that the servo flap at issue may have been improperly manufactured. (Doc. 151 at 6.) Facts tending to show that Kaman disregarded the alleged problem remain under dispute and will be presented at trial. Contradictory evidence remains in dispute as to the cause of Central's Crash and whether Kaman ignored the alleged defective servo flaps. The issue should go to the jury. *Hagen v. Dow Chem. Co.*, 863 P.2d 413, 419 (1993) (reversing the district courts grant of summary judgment where disputed material facts existed to support claims of punitive damages).

Kaman additionally argues that the Kaman should be allowed to make an entirely separate presentation of punitive damage evidence to the jury. (Doc. 151 at

10.) Plaintiffs note that Montana law requires the amount of punitive damages to be addressed separately after the jury determines any liability for punitive damages during the liability phase of the trial. (*Id*., citing Mont. Code. Ann. § 27-1-221.) Kaman cites *Teague v. Remington Arms Co.*, *LLC*, to support its argument that the Court should bifurcate the liability phase of the trial of punitive damage issues from the underlying liability issues due to relevance and potential prejudice. (Doc. 125 at 3., citing No. CV 18-184-M-DLC, 2022 WL 17103236, at *1 (D. Mont. Nov. 22, 2022)). The circumstances in *Teague* differ.

The parties in *Teague* took "extreme positions" as to the source of the defect in the firearm at issue in the case and experts on either side alleged the defect potentially had been caused by several factors. *Teague v. Remington Arms Co., LLC*, No. CV 18-184-M-DLC, 2022 WL 17103236, at *2 (D. Mont. Nov. 22, 2022). The court applied Fed. R. Civ. P. 42(b) in determining whether to bifurcate the tort liability and compensatory damages from the punitive damages. *Teague* at *13. The court determined that the plaintiff's product liability claim, and punitive damages claims both related to the plaintiff's wrongful death action. *Id.* The court additionally determined that the punitive damages issue raised issues unique to plaintiff's liability claim, such as the defendants' state of mind. *Id*. The district court found that it was proper to bifurcate punitive damages and product liability damages under Fed. R. Civ. P. 42(b). *Id*.

The defective firearms at issue in *Teague* differ from the allegedly defective helicopter part in this case. The products liability claim that Plaintiffs' assert involves only the alleged defective servo flap and the way it was manufactured and designed. (Doc. 38 at 2, 8-9.) Plaintiffs' and Kaman's experts agree that there might have been a defect in the way that the servo flap had been manufactured. (Doc. 151 at 6.) The evidence that may establish liability also may be relevant to establish whether punitive damages should be awarded. The facts establishing the cause of Central's Crash and the facts surrounding Kaman's action or inaction regarding the servo flap failure are nearly inseparable. The material facts that remain under dispute go to establishing compensatory damage liability and punitive damage liability. The trial should not be bifurcated, or trifurcated, during the liability phase as Kaman requests.

Plaintiffs' request mirrors the request of the plaintiffs in *Gallegos v. BNSF Ry. Co.*, No. CV 22-68-M-DLC, 2024 WL 1744346, at *3 (D. Mont. Apr. 23, 2024). The court found that evidence for plaintiff's negligence claim "substantially overlapped" with the evidence regarding plaintiff's punitive damage claim. *Id*. The plaintiff's claimed that "[defendants] failure to inspect and correct for unsafe conditions, failure to warn of hazards, failure to prevent the release of dangerous substances, and failure to conform its activities to its own plans, rules, and standards," led to his injury. *Id*. The court concluded that the theories advanced by

the plaintiff implicated defendant's knowledge and what defendant did with the knowledge. *Id*. The same proves true here.

Plaintiffs assert through evidence and expert testimony that an alleged defective servo flap caused Central's Crash and Tom's death. (Doc. 38.) As the manufacturer of the product at issue, Kaman's knowledge and actions taken are intertwined with whether Kaman acted with actual malice or fraud. The Court declines to trifurcate the trial. The Court will allow the jury to hear evidence that tends to prove liability for compensatory damages and liability for punitive damages during the liability phase of the trial. The Court will follow Montana law, and immediately proceed to a separate phase should the jury find Kaman liable for punitive damages. *See* Mont. Code. Ann § 27-1-221(8) (outlining steps after a jury returns a verdict establishing liability on punitive damages).

## V.    Kaman's MIL #12 to preclude evidence of liability insurance coverage or financial condition

Kaman seeks to preclude Plaintiffs from offering evidence regarding Kaman's liability insurance coverage during the compensatory damage and liability phase of the trial. (Doc. 127 at 3-5.) Kaman also seeks to limit presentation of evidence of Kaman's financial condition during the liability phase of the trial. (*Id*.) Plaintiffs acknowledge the limitations when presenting evidence about Kaman's liability insurance pursuant to Fed. R. Evid. 411. (Doc. 138 at 2.) Plaintiffs argue that

Kaman's motion is premature and overly broad because Kaman's financial condition would be relevant to show its capacity to fix alleged defects in the servo flap. (*Id*. at 3.) Plaintiffs further contend that Kaman's financial condition relates to its response to the other crashes involving alleged servo flap failure. (*Id*.)

The Court lacks the proper context to rule on evidence regarding both parties' financial condition and reserves ruling until trial. The parties shall not present evidence of opposing parties' insurance coverage or financial conditions to establish that the party acted negligently or wrongfully. The Court will rule when appropriate at trial.

**VI.    Plaintiffs Omnibus MIL**

**A.    Exclusion of Kaman's expert Dr. Kenneth Orloff, PhD ("Orloff")**

Plaintiffs seek to exclude Kaman's expert Orloff because his testimony is speculative and not supported by evidence. (Doc. 119 at 10.) Plaintiffs argue that Orloff's opinion was based first on speculation and only supported by one broken piece of wood on the ground. (*Id*. at 11.) Plaintiffs contend that Orloff improperly has supplemented his opinion to include information from Plaintiffs' drone expert and allegedly new photo evidence that Tom struck a tree before the Central Crash. (*Id*. at 14.) Orloff now opines that Tom's striking of a tree caused the sequence of events leading to the loss of the servo-flap and eventual crash. Plaintiffs also argue

that Orloff lacks the expertise to opine on forest conditions or characteristics as an aeronautical engineer. (*Id*. at 14.) Orloff originally determined that "no evidence indicated an in-flight impact with any of the trees surrounding the accident site." (*Id*. at 16 citing Doc. 85-28 at 25.) Plaintiffs ask the Court to prohibit evidence of any potential tree strike based partially on the NTSB report's definitive conclusion that no evidence supported a tree strike and Orloff's speculative theory. (*Id*. at 18.)

Kaman asserts that evidence supports Orloff's opinion regarding two issues: that the blade and servo flap separated at the same time; and that striking a "foreign object" likely caused the blades to come into contact with one another. (Doc. 147 at 8-9.) Orloff's supplemented his opinion based on a more thorough review of the newly disclosed drone imagery, from Plaintiffs, of the trees around the crash site. Kaman asserts that supplemental disclosures strengthened Orloff's tree strike theory and Plaintiffs cannot completely rule out the tree strike theory.

Orloff's theory, although supported by minimal evidence, should be allowed to be supplemented and presented at trial. A factual dispute remains and the Court should not weigh evidence at this stage in the litigation.

Orloff made inferences based on photos, site characteristics, debris from the Central Crash, and debris of natural materials around the Central Crash site. (Doc. 82-4 at 14-15.) Orloff concluded that the separation of the servo flap afterbody was triggered when the left white blade separated after having impacted the rotor hub

area. (*Id.*) Orloff also opines that the helicopter "probably was not at the location of the last recorded GPS position at the time the upset began." (*Id.* at 13.) Orloff claims he lacked the requisite photo evidence at the time of his initial report to conclude definitively that Tom struck a tree. (Doc. 147 at 10.)

The Court is not in possession of all the photos initially exchanged between the parties in 2020-2021. Kaman asserts that hundreds of additional photos of the Central Crash site, taken in 2020, were not disclosed in initial discovery. (Doc. 147 at 11.) Plaintiffs argue that the additional photos provide no more information that was not already disclosed in the first instance. Plaintiffs assert that Orloff's opinion on the alleged tree strike involves the same trees depicted in the initial disclosure of photos and that Orloff failed to advance his theory until Plaintiffs disclosed their rebuttal expert. To preserve fairness and ensure that the jury considers proposed theories by Kaman and Plaintiffs as to the potential causes leading to the Central's Crash, the Court will allow Orloff to supplement his expert report, allow Plaintiff's drone expert to present evidence, and allow Kaman's drone expert to present evidence. There seems to be at least some disputed material facts that point to the tree strike theory, most importantly the alleged discrepancies surrounding the location of the damaged helicopter compared to the last recorded GPS location.

## B.     Exclusion regarding Robyn Duffy-Carlson's remarriage

Plaintiffs seek to exclude evidence that Tom's widow, Robyn, has remarried after Central's Crash. Kaman does not oppose limiting evidence of Robyn's remarriage. Kaman intends to use Robyn's legal name of Robyn Duffy-Carlson. The Court denies Plaintiffs' request to order that witnesses refer to Robyn only by her widowed last name of Robyn Duffy. Plaintiffs' argument that using Robyn's married last name impliedly allows discussion of her remarriage is not well taken. The parties shall refer to Robyn by her legal name of Robyn Duffy-Carlson. Kaman shall be prohibited from suggesting or making any argument that Robyn's remarriage somehow lessens the Robyn's pain and suffering. Kaman also shall not question the jury about Robyn's husband and shall focus on the parties to the case.

### C. Exclusion of another instance where Tom struck a tree with the same helicopter at issue in this case

Plaintiffs also seek to exclude evidence of a tree strike incident in 2009 where Tom struck a tree while moving oil drills and was forced to land immediately. (Doc. 119 at 20.) The main blades did not come into contact with each other and break off the helicopter in the 2009 incident, but the entire servo flap came off without the helicopter having crashed. (*Id*.) Kaman asserts that the 2009 tree strike incident would demonstrate that operating a helicopter with a missing servo flap does not always have the devastating consequences that Plaintiffs allege. (Doc. 147 at 20.) The 2009 tree strike incident involved the same K-MAX helicopter involved in the

2020 tree strike with Tom as the pilot both times. (*Id*.) Kaman asserts that the "substantial similarity" test does not apply because it does not seek to offer the 2009 incident as evidence of a product defect, but as a real-world implication of losing a servo flap in flight. (*Id*. at 21.)

The Court agrees with Kaman. Plaintiffs argue that the two incidents are dissimilar and "evidence of other incidents is not admissible unless the incidents occurred under the same or substantially similar circumstances as the instant case." (Doc. 119 at 21, citing *Krueger v. Gen. Motors Corp*., 783 P.2d 1340, 1345-46 (Mont. 1989) (citations omitted).) The plaintiffs in *Chapman v. Mazda Motor of Am* sought to introduce evidence of other car accidents involving the same model of car. The defendants objected and contended that the other accidents were not substantially similar as required by case law. 7 F. Supp. 2d 1123, 1128 (D. Mont. 1998). The court ultimately deferred until trial to rule on the issue with more context. *Id*.

The Court notes that Kaman seeking to present evidence of prior crashes, rather than Plaintiffs, lowers the standard for allowing the evidence to be presented. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 880 (9th Cir. 1990) (upholding a district court's determination that defendant's presentation regarding the lack of evidence of sufficiently similar incidents was properly sent to the jury). Kaman seeks

to admit testimony of Tom's 2009 tree strike as evidence of the "real-world effect of the loss of servo flap." (Doc. 147 at 22.)

Plaintiffs contend that the two incidents differ. Plaintiffs argue that the 2009 incident no doubt involved a tree strike, and the 2020 incident allegedly did not. Plaintiffs also assert that the way in which the servo flap separated from the rest of the blade differed, thus warranting exclusion of the 2009 tree strike incident. (Doc. 119 at 22-23.) Plaintiffs further assert that Tom was not lifting a load during the 2009 tree strike incident, that no in-flight breakup of the rotor blades occurred during the 2009 tree strike incident, and that no crash followed the 2009 tree strike incident. (*Id*. at 24-25.)

The Court recognizes that the 2009 tree strike and the 2020 Central Crash differ. The two incidents involved the same K-MAX helicopter, the same pilot, same part allegedly affecting flight. These two incidents prove sufficiently similar to allow the jury to sort out potential relevance. *Jones*, 921 F.2d at 880.

### D.    Exclusion of evidence regarding other ligation involving Central

Plaintiffs seek to exclude evidence of other Central litigation involving helicopter incidents. (*Id*. at 27.) Central's owner, Mark Duffy, has been involved in four other cases of helicopter crashes and related damages. Plaintiffs allege that the Connecticut lawsuit filed by Kaman to recover money owed for parts bought by Central is the only one relevant to this case. (*Id*.) Kaman asserts that litigation

involving Mark Duffy and Central not having paid a bill for installation of insulation relates to Duffy and Central not paying Kaman pursuant to its purchase agreement. Evidence of prior litigation involving Central and Kaman shows the business relationship of the parties. Central's other litigation with parties unrelated to this suit falls beyond the scope of what should be allowed. The Court will prohibit the parties from introducing evidence of other litigation involving either party to show prejudice or propensity to commit wrong. The Court reserves ruling until trial on the remaining evidence of other litigation not mentioned in this order so that proper context may be established.

### E.    Exclusion of testimony about poor/insufficient maintenance of Central's helicopter fleet

Plaintiffs argue that Kaman should not be able to present evidence alleging Central's maintenance of its helicopters was poor or insufficient. (Doc. 119 at 29.) Plaintiffs specifically assert that Kaman lacks the expert required to opine on whether Central's maintenance on its K-MAX helicopters was insufficient. (*Id*. at 30). Central completed all required maintenance inspections and were up to aviation standards. (*Id*. at 30-31.) Kaman asserts that discussion of facts relating to mechanical inspection deficiencies would be premature due to the vague nature of Plaintiffs' objection. (Doc. 147 at 26.)   The Court reserves ruling until trial on Kaman's commentary regarding insufficient or poor maintenance on behalf of

Central. Kaman may cross-examine Plaintiffs' experts on the required maintenance and whether Plaintiffs experts observed any cracks in the blades or servo flaps during inspection.

### F.    A ruling that there is no negative implication from not calling an NTSB employee as a witness to testify

Plaintiffs seek to preclude Kaman from alleging that Plaintiffs should have called an NTSB employee to testify. (Doc. 119 at 31.) Kaman asserts that Plaintiffs' effort to introduce the NTSB reports into evidence triggers Kaman's right to provide evidence that federal law prohibits the author of the NTSB reports from testifying as a witness and being subject to cross-examination. (Doc. 147 at 27-28.) Plaintiffs correctly argue that the factual findings in an NTSB report may be used as evidence in subsequent litigation. (Doc. 201 at 12, citing Fed. R. Evid. 803(8).) Kaman correctly points out that NTSB employees may not testify in subsequent litigation about their involvement preparing the NTSB factual or probable cause reports. 49 C.F.R. 835.5 The Court will address the NTSB reports in more detail in a separate order, but the factual findings contained in the NTSB reports generally may be allowed as evidence. Fed. R. Evid. 803(8).

The Court will allow the parties generally to explain the purposes for which an NTSB report or Canadian TSB report are prepared and the limitations imposed by statute on their use in litigation. The parties shall not comment on the failure or

choice not to call the NTSB investigators involved as witnesses. The jury instructions will further assist the jury in understanding the admissibility of NTSB reports and unavailability of NTSB investigators.

### G.    A ruling prohibiting Kaman from arguing that the K-MAXs were not safe because of a lack of airworthiness approval from the Federal Aviation Administration ("FAA")

Plaintiffs seek to prevent Kaman from arguing that the lack of an FAA "airworthy" certification for Central's K-MAX helicopter means that it was unsafe. (Doc. 119 at 32.) Kaman asserts that FAA's airworthiness certification is highly relevant because Duffy and Central sought the FAA approval on many occasions and the FAA was aware of the recurring safety issues with the K-MAX. (Doc. 147 at 28-30.) The Court lacks the proper context to rule on the probative value of the lack of an FAA airworthiness certification for Central's K-MAX helicopter and the potential for prejudice. The Court reserves ruling until trial.

### ORDER

Accordingly, **it is ORDERED** that:

1.  Kaman's Motion in Limine #8 (Doc. 116) is **DENIED.**

2.  Kaman's Motion in Limine #9 (Doc. 120) is **GRANTED** in part.

3.  Kaman's Motion in Limine #10 (Doc.121) is **GRANTED** in part.

4. Kaman's Motion in Limine #11 (Doc.124) is **DENIED.**

5. Kaman's Motion in Limine #12 (Doc. 126) is **GRANTED** in part**.**

6. Plaintiff's Motion in Limine (Doc. 118.) is **DENIED** in part and **GRANTED** in part in accordance with the above order.

**DATED** this 3rd day of April, 2025

_Brian Morris_
_____
Brian Morris, Chief District Judge
United States District Court